UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROYCE-GEORGE & ASSOCIATES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-12612 |
| ) | |
| U.S. BANK, as TRUSTEE for MORGAN ) | |
| STANLEY BANK OF AMERICA ) | |
| MERRILL LYNCH TRUST 2013-C13 ) | |
| COMMERCIAL PASS-THROUGH ) | |
| CERTIFICATES, SERIES 2013-C13 and ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

FACTS ...........................................................................................................................4

ARGUMENTS & AUTHORITIES ...................................................................................6

I.      Motion To Dismiss Standard Of Review........................................................6

II.     RGA's Breach of Contract Claim Against Lender Fails ....................................7

        A.      Lender Complied with the Express Terms of the Agreement.................7

III.    RGA's Claim for Accounting Fails ..................................................................9

IV.     RGA's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing
        Fails Because Defendants' Conduct Was Proper Under the Loan Documents .................10

        A.      The Loan Documents Authorize Expense Payment and RGA Does Not
                Allege Bad Faith .................................................................................11

        B.      Lender Was Not Required to Pursue Fees in the First Litigation .........................13

        C.      Lender Provided Payoff Statements....................................................15

V.      RGA Is Not Entitled To Declaratory Relief Where Its Substantive Claims Fail
        And Where It Is Duplicative Of Plaintiffs' Breach Of Contract Claim..............................15

VI.     The Unjust Enrichment Claim Fails Because Defendants' Relationship is
        Governed by Contract. .......................................................................................17

VII.    The Chapter 93A Fails for A Variety of Reasons ..............................................17

CONCLUSION..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Adams v. Allstate Life Ins. Co.,
 No. CV 16-9465 (RBK/JS), 2017 WL 3578552 (D.N.J. Aug. 18, 2017) ..........................10, 11

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ...................................................................................................................6

Atkinson v. Rosenthal,
 33 Mass. App. Ct. 219 (1992) ..................................................................................................19

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007) ...................................................................................................................6

BoylstonD3 LLC v. Galvin,
 496 F. Supp. 3d 692 (D. Mass. 2020) ......................................................................................20

Coldwell Banker Real Estate, LLC v. Bellmarc Grp., LLC,
 2021 U.S. Dist. LEXIS 171987 (D.N.J. Sept. 9, 2021) ............................................................9

Coldwell Banker Real Estate, LLC v. Plummer & Assocs., Inc.,
 No. CIV.A.09-1313SRC, 2009 WL 3230840 (D.N.J. Oct. 2, 2009) ................................10, 11

Duffy v. Charles Schwab & Co.,
 123 F. Supp. 2d 802 (D.N.J. 2000) ..........................................................................................17

Elite Pers., Inc. v. PeopleLink, LLC,
 No. CIV.A. 15-1173, 2015 WL 3409475 (D.N.J. May 27, 2015) .....................................11, 12

Fed. Nat'l Mortg. Ass'n v. Nicholas J. DuBois,
 No. CV153787JMVMF, 2018 WL 5617566 (D.N.J. Oct. 30, 2018) .......................................16

Gordon v. United Cont'l Holding, Inc.,
 73 F. Supp. 3d 472 (D.N.J. 2014) .........................................................................................7, 8

Greek v. Diet Works,
 LLC, No. CV 17-4738, 2018 WL 1905803 (D.N.J. Apr. 23, 2018)...................................15, 16

Hahn v. OnBoard LLC,
 Case No. 2:09- cv-03639 DRD MAS, 2009 U.S. Dist. LEXIS 107606 (D.N.J.
 Nov. 16, 2009) ..........................................................................................................................11

Hassler v. Sovereign Bank,
 644 F. Supp. 2d 509 (D.N.J. 2009), <u>aff'd</u>, 374 F. App'x 341 (3d Cir. 2010) ...................11, 12

Kleiner v. Cengage Learning Holdings II, Inc.,
    66 F.4th 28 (1st Cir. 2023) ........................................................................18

Levings v. Forbes & Wallace, Inc.,
    8 Mass. App. Ct. 498 (1979) ......................................................................19

MZL Capital Holdings, Inc. v. TD Bank, N.A.,
    734 F. App'x 101 (3d Cir. 2018) ..................................................................8

Ne. Data Systems v. McDonnell Douglas Computer Systems Co.,
    986 F.2d 607 (1st Cir. 1993) ......................................................................18

Ocasio-Hernández v. Fortuño-Burset,
    640 F.3d 1 (1st Cir. 2011) ........................................................................6, 7

Padula v. Freedom Mortg. Corp.,
    No. 19-CV-11666-ADB, 2020 WL 6323078 (D. Mass. Oct. 28, 2020) ..........................13, 14

Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.,
    Case No. 2:23-cv-22124 (WMJ), 2024 U.S. Dist. LEXIS 62417 (D.N.J. April
    4, 2024) ..........................................................................................16

Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.,
    759 F. Supp. 2d 110 (D. Mass. 2010) ..........................................................13

Royce-George & Assocs., LLC v. U.S. Bank, N.A. as Tr. for Morgan Stanley
    Bank of Am. Merrill Lynch Tr. 2013-C13 Com. Pass-Through Certificates,
    Series 2013-C13,
    No. 18-CV-12198-ADB, 2021 WL 294244 (D. Mass. Jan. 28, 2021) ..................................1, 4

Shri Gayatri, LLC v. Days Inns Worldwide, Inc.,
    No. CV 15--40104-TSH, 2018 WL 1542376 (D. Mass. Mar. 28, 2018)................................7

SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC,
    722 F. Supp. 3d 16 (D. Mass. 2024) ............................................................17

Sons of Thunder, Inc. v. Borden, Inc.,
    148 N.J. 396 (1997) ..............................................................................10

Spence v. Bos. Edison Co.,
    390 Mass. 604 (1983) ............................................................................19

Stonehill Coll. v. Mass. Comm'n Against Discrimination,
    441 Mass. 549 (2004) (Sosman, J., concurring) ................................................19

Todisco v. Verizon Commc'ns, Inc.,
    497 F.3d 95 (1st Cir. 2007) ......................................................................7

<u>Transtech Indus. v. Certain Underwriters</u>,
   2009 N.J. Super. Unpub. LEXIS 3167 (N.J. App. July 21, 2009) ............................9

<u>U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Leigh</u>,
   293 So. 3d 515 (Fla. Dist. Ct. App. 2019) ...............................................14

<u>Uncle Henry's Inc. v. Plaut Consulting Co.</u>,
   399 F.3d 33 (1st Cir. 2005) ...........................................................18

**Statutes**

28 U.S.C. § 2201(a) ..............................................................................15

G.L. c. 93A, § 11 ................................................................................17

G.L. c. 184, § 15(c) .............................................................................13

N.J. Stat. §17:9A-59.25 ..........................................................................19

N.J. Stat. § 17:9A-59.31 .........................................................................19

209 CMR 18.02 ..................................................................................19

209 CMR 18.21 ..................................................................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................6

Fed. R. Civ. P. 54 ........................................................................10, 13, 14, 15

Defendants U.S. Bank, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C13 Commercial Mortgage Pass-Through Certificates, Series 2013-C-13 ("**Lender**") and Wells Fargo Bank, N.A. ("**Wells Fargo**," and collectively with Lender, "**Defendants**") submit this memorandum of law in support of their motion to dismiss the complaint ("**Complaint**") filed by Plaintiff Royce-George & Associates, LLC ("**Borrower**" or "**RGA**").

## PRELIMINARY STATEMENT

This case involves a $2.5 million non-recourse commercial mortgage loan to RGA (the "**Loan**") that was secured by a first-priority interest in commercial property located in New Jersey and the leases and rents derived therefrom (the "**Collateral**"). After default, and well after the stated maturity date of the Loan, RGA paid the Loan balance in full without any reservation of rights, and Lender released its lien on the real and personal property.

The Loan was governed and secured by written documents that were executed and delivered by RGA, including a Mortgage and Security Agreement (the "**Mortgage**"), Reserve and Security Agreement (the "**RSA**"), and certain other documents (collectively, the "**Loan Documents**").[1] Non-recourse commercial mortgage loans are specialty products made available only to sophisticated commercial parties – here, a Massachusetts limited liability company and Single Purpose Entity[2] owning no assets other than the Property, the Rents, and personal property incidental to the operation of the Property.

In 2018, RGA sued Lender claiming that Lender breached the RSA by retaining excess cash in a reserve account after a contractual trigger event occurred. Royce-George & Assocs., LLC v. U.S. Bank, N.A. as Tr. for Morgan Stanley Bank of Am. Merrill Lynch Tr. 2013-C13 Com.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

[2] As defined in Section 4.2 of the Mortgage. See Doc. No. 1-2 at 23.

<u>Pass-Through Certificates, Series 2013-C13</u>, No. 18-CV-12198-ADB, 2021 WL 294244, at *1 (D. Mass. Jan. 28, 2021) (the "**First Litigation**"). This Court (*Burroughs, D.J.*) disagreed and granted Lender summary judgment. Throughout the pendency of the First Litigation, RGA demonstrated a fundamental misunderstanding of its Loan Documents. Now, in 2025, nothing has changed. By initiating this lawsuit, RGA demonstrates again that it does not understand its Loan Documents.

Lender complied with the express written terms of the Loan Documents, but RGA did not. The Loan Documents obligated RGA to reimburse Lender for its out-of-pocket expenses (in the aggregate, the "**Expenses**") upon demand. Specifically, Section 19.2 of the Mortgage provided:

> Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property, whether or not any legal proceeding is commenced hereunder or thereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower, and all "special servicing", "workout" and/or "liquidation" fees (or their equivalent).

Compl. Ex. B, Doc. No. 1-2 at 57. After Lender made written demand, RGA failed and refused to reimburse Lender for its out-of-pocket expenses causing an Event of Default[3] to occur on or about October 15, 2021. Compl. Ex. F, Doc. No. 1-6. This default remained unremedied through the stated Maturity Date of the Loan, October 1, 2023, when the entire Debt was due and payable. RGA failed to repay the Loan on or before the Maturity Date, causing the occurrence and continuance of an additional Event of Default.

RGA repaid the Loan more than six months after the Maturity Date, including all fees and Lender's out-of-pocket expenses. Upon receipt of the payoff funds, Lender released its lien on the Property. Although the parties' contracts concluded, Plaintiff now asserts claims for: breach of

---

[3] As defined in Section 10.1 of the Mortgage. <u>See</u> Doc. No. 1-2 at 43.

contract (Count I); accounting (Count II); violation of the implied covenant of good faith and fair dealing (Count III); declaratory relief (Count IV); unjust enrichment (Count V), and alleged violations of G.L. c. 93A (Count VI).  Each claim fails as a matter of law.

*First*, Borrower's breach of contract claim, which alleges that Lender failed to apply debt service payments from reserves after maturity, fails because the entire Debt, not "debt service," was due and owing on the Maturity Date. RGA's failure to pay the entire Debt on or before the Maturity Date was an Event of Default, and Lender applied the Reserve Funds according to the terms of the Loan Documents in its sole and absolute discretion.

*Second*, the accounting claim fails because RGA cannot satisfy any of the three possible grounds for an accounting.

*Third*, the good faith and fair dealing claim fails because Lender strictly complied with the Loan Documents, and the implied covenant cannot create new obligations.

*Fourth*, the declaratory judgment claim fails because it merely recasts the breach of contract claim.

*Fifth*, the unjust enrichment claim fails because the amount RGA paid to satisfy the Debt was in strict accordance with the Loan Documents.

*Lastly*, the Chapter 93A claim fails because the statute does not apply to a commercial Loan securing a property in New Jersey with a New Jersey choice of law provision for conduct occurring primarily and substantially outside of Massachusetts. Moreover, the underlying contract dispute between sophisticated business entities does not rise to the level of rascality required for a commerce-based Chapter 93A claim.

For these reasons, as well as those set forth herein, the Court should dismiss the Complaint.

## FACTS

On September 3, 2013, RGA, a sophisticated, single-purpose entity, negotiated and obtained a $2.5M non-recourse loan from Morgan Stanley Mortgage Capital Holdings, LLC, which was later assigned to Lender. See Complaint ¶10, (hereinafter "Compl. ¶__"). To secure the Loan, RGA granted a Mortgage to the Lender on commercial property that it owns at 78 Church Street in Flemington, New Jersey ("**Property**"). Compl. ¶¶7, 14. Because the Loan was a non-recourse loan – meaning that generally neither the obligor nor the Guarantor had personal liability – RGA granted the Lender additional security for its obligations by, among certain other things, entering into the RSA, which provided for certain reserve accounts to be maintained and pledged to Lender. Compl. ¶¶17-18; Compl. Ex. C, Doc. No. 1-3. The Loan Documents are all governed by New Jersey law. See Compl. ¶5; Doc. No. 1-3 at 11.

As established in the First Litigation, a Trigger Event occurred when Walgreens, RGA's tenant, stopped operating at the Property. Royce-George & Assocs., No. 18-CV-12198-ADB, 2021 WL 294244, at *2. Once there was a Trigger Event, the Excess Cash Flow was deposited into an "Excess Cash Reserve Account" ("**ECRA**") to serve as additional security for the Loan, where it remains until there was a "Cash Sweep Termination," which never occurred. Id. RGA sued Lender in the First Litigation in 2018 falsely claiming that Lender improperly held Excess Cash Flow in the ECRA as Reserves. RGA was wrong and this Court granted Lender summary judgment on that and other issues. See **Exhibit 1**, Order on Motion for Summary Judgment in First Litigation, at *5.

Lender incurred Expenses in connection with the First Litigation.  Pursuant to section 19.2 of the Mortgage, Borrower was obligated for the payment of all fees and expenses incurred to protect its interest in the Property "on demand." Doc. No. 1-2 at 57. Under section 19.2, Borrower's obligation to pay Lender the Expenses included "all 'special servicing', 'workout' and/or 'liquidation' fees (or their equivalent)." Id.

4

As evidenced by Exhibit F to the Complaint, on or about October 4th, 2021, Lender demanded payment of the Expenses, but Borrower failed and refused to pay, causing the occurrence of an Event of Default under Section 10.1(a) of the Mortgage.  By definition, the Expenses constituted a portion of the Debt. See Doc. No. 1-2 at 4.

On or about October 1, 2023, the Maturity Date occurred, but Borrower failed to repay the Debt, causing the occurrence and continuance of an additional Event of Default under Section 10.1(a) of the Mortgage. See Compl. ¶32; Doc. No. 1-2 at 43. The Events of Default remained unremedied until April 18, 2024, when Borrower remitted full payment of the Debt to Lender. Compl. ¶¶43, 46.

Upon the occurrence of any Event of Default, under Section 6.2 of the RSA, Borrower "shall immediately lose all of its right to receive disbursement from each of the Reserves unless and until the Debt has been paid in full..." Doc. No. 1-3 at  10. In addition, under Section 7.1(a) of the RSA, Lender "in its sole discretion, may use the funds remaining in each of the Reserves (or any portion thereof) for any purpose including but not limited to ... repayment of any portion of the Debt; ... reimbursement of Lender for any losses or expenses (including without limitation legal fees) suffered or incurred by Lender as a result of such an Event of Default...." Id.

Borrower was also not entitled to disbursement of any funds in the Restricted Account or the Deposit Account. Disbursements from the Deposit Account are governed by the Cash Management Agreement ("**CMA**"), and Section 5(b) of the CMA, which contains a disbursement waterfall. Doc. No. 1-4 at 5. On the Maturity Date, however, the "debt service" is the entire Debt, and thus, the no funds make it past subsection 5(b)(iv) "funds sufficient to pay the debt service on the Loan." Id. In addition, under Section 9(b):

> Upon the occurrence of an Event of Default under this Agreement, Lender shall have the continuing exclusive control of, and right to withdraw and apply, the funds

in the Restricted Account and the Accounts to payment of any and all debts, liabilities, and obligations of the Borrower to Lender pursuant to or in connection with this Agreement, the Note, the Security Instrument and the other Loan Documents, in such order, proportion, and priority as Lender may determine in its sole discretion.

Id. at p. 6.

Following the Maturity Date, Lender paid the Expenses from amounts on deposit in the Reserves, reducing the Reserve balance to $170,614.57, as reflected in the Payoff Demand Statements sent to Borrower on or about November 29, 2023, March 25, 2024, and April 16, 2024. Compl. ¶¶34, 45, 46. Borrower remitted the amounts shown on the Payoff Demand Statement to Lender on or about April 19, 2024, without any reservation of rights, and thereafter Borrower's agent recorded the mortgage release. Compl. ¶46.

## ARGUMENTS & AUTHORITIES

### I. Motion To Dismiss Standard Of Review.

A complaint must be dismissed where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding a motion to dismiss, the Court must assume the truth of well-pled factual allegations, but need not accept "legal conclusion[s]," "naked assertion[s]" without "factual enhancement[s]," "conclusory statement[s]," or implausible inferences. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557, 561 (2007); see also Iqbal, 556 U.S. at 678; Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). And, where a plaintiff "ha[s] not nudged their claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 547, 570; see Iqbal, 556 U.S. at 678;

Ocasio-Hernández, 640 F.3d at 12 (complaint must be dismissed unless "the claim has facial plausibility"). Finally, if it appears – as here – that plaintiff cannot recover on any viable theory, dismissal of the complaint with prejudice is proper as any amendment would be futile.  See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007). RGA's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, unjust enrichment, and violations of Chapter 93A should be dismissed because RGA fails to state any plausible claims for relief.

## II.    RGA's Breach of Contract Claim Against Lender Fails.

RGA's Complaint does not clearly allege if the breach of contract claim is based upon the RSA, the CMA, or other Loan Documents, and it does not allege what provisions of any agreement Defendants allegedly breached. Nonetheless, no claims under any of the Loan Documents are viable because Lender applied the funds consistent with the Loan Documents.

### A.    Lender Complied with the Express Terms of the Agreement.

To state a claim for breach of contract, RGA must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations."[4] Gordon v. United Cont'l Holding, Inc., 73 F. Supp. 3d 472, 478 (D.N.J. 2014) (quoting Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir.2007)). RGA's breach of contract claim fails because it has not, and cannot, identify any provision of any agreement that Lender breached.

---

[4] The Agreement is governed by New Jersey law.  Accordingly, New Jersey substantive law applies to the claims at issue in this dispute.  Shri Gayatri, LLC v. Days Inns Worldwide, Inc., No. CV 15--40104-TSH, 2018 WL 1542376, at *3 (D. Mass. Mar. 28, 2018) ("It is, of course, a black-letter rule that state substantive law must be applied by a federal court sitting in diversity jurisdiction.") (internal citations omitted) (applying New Jersey choice-of-law provision in governing agreement).

Under the RSA, when there was a Trigger Event, any excess Cash Flow[5] was placed in the ECRA to serve as additional security for the Loan until the occurrence of a Cash Sweep Termination. See Doc. No. 1-3 at 4. Thus, after Walgreens stopped doing business at the Property, the excess Cash Flow was placed in the ECRA, where it remained because there was never a Cash Sweep Termination.  Thus, Borrower was never entitled to the ECRA funds. See Id.

Borrower did, however, cause the occurrence of an Event of Default when it failed to pay Lender's demand for Expenses in October 2021. See Doc. No. 1-2 at 43.  It committed a further Event of Default when it failed to pay the entire Debt on or before the Maturity Date.  Id.  Under Section 6.2 of the RSA, when an Event of Default exists, Borrower immediately loses all of its rights to disbursements from each of the Reserves unless and until the Debt has been paid in full. Doc. No. 1-3 at 10. Likewise, under Section 7.1 of the RSA, when there is an Event of Default, Lender "in its sole discretion, may use the funds remaining in the Reserves ... for any purpose, including ... repayment of any portion of the Debt." Id. Thus, when Lender applied the Reserves to the Expenses, it was applying those funds to a portion of the Debt.  Because Lender did nothing more than act in accordance with the Agreement, it could not have breached the RSA as a matter of law. See MZL Capital Holdings, Inc. v. TD Bank, N.A., 734 F. App'x 101, 105 (3d Cir. 2018) (affirming dismissal of breach of contract claim where plaintiff fails to identify any provision in the contract that defendant purportedly breached); Gordon, 73 F. Supp. 3d at 478 (dismissing breach of contract claim where plaintiffs' factual allegations failed to support an inference that defendants breached their contractual obligations).

---

[5] Excess Cash Flow is the money remaining from the tenant's rental payment after the deduction of RBA's loan payment to Lender.

Lender also did not breach the CMA. While it is not clear that the CMA applied to any of the funds at issue, Section 5(b) provides how Lender should disburse funds, if any, in the Deposit Account. Compl. Ex. D, Doc. No. 1-4 at 5. The waterfall starts with taxes, insurance, default interest and late charges before getting to subsection (iv) which includes "funds sufficient to pay the debt service on the Loan due on such monthly Payment Date ..." Id. As of the Maturity Date, the debt service was the entire Debt. Thus, Lender could apply any Deposit Account funds to any portion of the entire Debt. Accordingly, Lender could not have breached the CMA.[6]

Accordingly, Borrower has failed to allege any plausible breach of contract claim. To the contrary, the allegations and the agreements show that Lender complied with the Loan Documents.

## III.    RGA's Claim for Accounting Fails

RGA is not entitled to an accounting as a right. See Transtech Indus. v. Certain Underwriters, 2009 N.J. Super. Unpub. LEXIS 3167, *8 (N.J. App. July 21, 2009) ("accountings are not available as a right…"). The Court has three traditional grounds upon which it can order an accounting. The first is the existence of a fiduciary or trust relation; the second is the complicated character of an account; and the third is the need of discovery. See id. at *9 (internal citations omitted). Plaintiff states the gravamen for the accounting claim is the lack of remedy at law. See Compl. ¶61. There is no need for discovery here, however, because Lender provided Borrower with ample records. See Coldwell Banker Real Estate, LLC v. Bellmarc Grp., LLC,

---

[6] To the extent that the allegation in paragraph 54 of the Complaint refers to bank fees payable to Wells Fargo Bank, N.A. being withdrawn for the Restricted Account, such withdrawals are specifically authorized. Section 9 of the DACA provides as follows (Compl. Ex. E, Doc. No. 1-5 at 3) (emphasis added): Borrower agrees to pay all Bank's fees and charges for the maintenance and administration of the Restricted Account and for the treasury management and other account services provided with respect to the Restricted Account and any Lockboxes (collectively "Bank Fees"), …. *The Bank Fees will be paid by Bank debiting one or more of the Restricted Account on the Business Day that the Bank Fees are due, without notice to Lender or Borrower.*

2021 U.S. Dist. LEXIS 171987, at *23-24 (D.N.J. Sept. 9, 2021) (finding accounting appropriate where plaintiff refused to disclose evidence *during* formal discovery (emphasis added)).  RGA alleges that Lender provided Borrower with a 40-page payment history, three payoff statements, and, of course, discovery in the First Litigation. RGA also paid off the Loan in full without a reservation of rights.  Given those facts, and because RGA has not stated a viable cause of action, it is not entitled to the remedy of an accounting.

## IV.    RGA's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails Because Defendants' Conduct Was Proper Under the Loan Documents

RGA contends that Lender breached the implied covenant of good faith and fair dealing by allegedly "(a) charg[ing] fees they did not earn, and which were not provided for by the Loan Documents; (b) simply keep[ing] attorney's fees claimed due, without first obtaining approval from the Court, as required by Fed. R. Civ. P. 54 ("Rule 54"); (c) fail[ing] to timely issue a pay-off statement, despite due demand; and (d) fail[ing] to credit to principal certain funds held in escrow, as requested by the Plaintiff." Compl. ¶66. RGA is wrong because Lender followed the Loan Documents.

In New Jersey, "every contract ... contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Adams v. Allstate Life Ins. Co., No. CV 16-9465 (RBK/JS), 2017 WL 3578552, at *2 (D.N.J. Aug. 18, 2017) (quoting Sons of Thunder, 148 N.J. at 420). Notwithstanding this obligation, the implied covenant cannot "override a contract's express terms." Coldwell Banker Real Estate, LLC v. Plummer & Assocs., Inc., No. CIV.A.09-1313SRC, 2009 WL 3230840, at *3-5 (D.N.J. Oct. 2, 2009) (dismissing good faith and fair dealing claim based upon conduct expressly permitted under governing agreement); see

Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 518 (D.N.J. 2009), aff'd, 374 F. App'x 341 (3d Cir. 2010) ("[T]he duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement."); Elite Pers., Inc. v. PeopleLink, LLC, No. CIV.A. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015) ("[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract."). "Bad faith or ill motive is an essential element of a claim for breach of the implied covenant of good faith and fair dealing." Plummer, 2009 WL 3230840, at *4. "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Adams, 2017 WL 3578552, at *2 (quoting Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005)).

Furthermore, a plaintiff cannot maintain a separate action for breach of implied covenant of good faith and fair dealing where it is duplicative of the plaintiffs' contract claim. See Hahn v. OnBoard LLC, Case No. 2:09- cv-03639 DRD MAS, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009) (dismissing implied covenant claim duplicative of breach of contract claim).

### A.    The Loan Documents Authorize Expense Payment and RGA Does Not Allege Bad Faith.

Lender could not have breached the implied covenant of good faith and fair dealing by charging special servicing, late fee, or other fees to the Loan account because those fees are expressly provided for in the Loan Documents. For example, Section 19.2 of the Mortgage expressly provides that "Borrower shall pay to Lender on demand any and all expenses ... and all

11

'special servicing', 'workout' and/or 'liquidation' fees (or their equivalent)." Doc. No. 1-2 at 57. Section 19.1 also provides for loan servicing and special servicing fees. Id. at 56. For its part, the Note also contemplates Borrower's payment of fees.  Article XVII provides that "Borrower shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorney's fees and including, *[sic]* including, without limitation, loan servicing or special servicing fees, loan advances, and 'work-out' and/or liquidation fees, incurred or paid by Lender in enforcing this Note." Compl. Ex. A, Doc. No. 1-1 at 11. The CMA and the RSA also address fees. Section 10 of the CMA provides for all fees, charges, costs, and expenses associated with the Accounts.Doc. No. 1-4 at 7. Section 4.8 of the RSA requires Borrower to reimburse Lender all reasonable fees, charges, costs, and expenses incurred by Lending in connection with disbursing funds from the Reserve Escrow Account. Doc. No. 1-3 at 8. Lastly, Section 7.1 of the RSA requires Borrower to reimburse Lender any losses of expenses (including, without limitation, legal fees) suffered or incurred by Lender as a result of such Event of Default. Id. at 10.

Since the challenged fees were expressly provided for in the Loan Documents, the imposition of fees after Events of Default and Maturity cannot constitute a violation of the implied covenant of good faith and fair dealing. Hassler, 644 F. Supp. 2d at 518; Elite Pers., Inc. v. PeopleLink, LLC, 2015 WL 3409475, at *3. Likewise, for the reasons set forth in the breach of contract claim, Lender applied the funds pursuant to the terms of the Loan Documents. Supra II.A. RGA cannot use the implied covenant to create obligations beyond the terms of the parties' contract. Therefore, any claims based upon fees incurred under the Loan Documents fail as a matter of law.

There is also no factual basis for RGA's good faith and fair dealing claim.  RGA does not, and cannot, allege any facts establishing that Lender acted in bad faith or had an ill motive.  Lender

charged fees it was entitled to under the Loan Documents, issued a payoff statement allowing a

closing, and appropriately credited funds as allowed under the Loan Documents. RGA does not,

and cannot, allege that Lender took any of these actions in bad faith. See Rohm & Haas Elec.

Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 123 (D. Mass. 2010) ("A

showing of bad faith requires dishonest purpose, conscious wrongdoing, or unfairness beyond bad

judgment or failing to abide by the terms of a contract.").

> **B.    Lender Was Not Required to Pursue Fees in the First Litigation.**

RGA's reliance on Federal Rule of Civil Procedure 54(d) for its good faith and fair dealing

claim is misplaced.  Lender had no obligation to seek attorneys' fees in the First Litigation.  Lender

asserted no claims the First Litigation, the fees were not yet due and owing, the fees arose under

another agreement, and the fees were not "prevailing party" fees.

Rule 54(d) addresses the procedures and limits of *claims* via motions for attorneys' fees.

Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be

made by motion unless the substantive law requires those fees to be proved at trial as an element

of damages"). The Advisory Committee notes on the 1993 amendments to Rule 54 indicate that

Rule 54(d)(2) "does not, however, apply to fees recoverable as an element of damages, as when

sought under the terms of a contract."  Fed. R. Civ. P. 54 advisory committee note to 1993

amendment. Rule 54(d) should not apply to this case, and RGA's reliance on Rule 54(d) for its

good faith and fair dealing claim is misplaced.[7]

---

[7] During their pre-motion conference, Lender's counsel requested Plaintiff provide case law that
supports his Rule 54(d) argument.  Plaintiff's counsel provided Padula v. Freedom Mortg. Corp.,
No. 19-CV-11666-ADB, 2020 WL 6323078 (D. Mass. Oct. 28, 2020). Padula involved the
timeliness and appropriateness of a motion for attorneys' fees in connection with a special motion
to dismiss a lis pendens under G.L. c. 184, § 15(c) and held that the federal rules apply.  Padula
did not involve facts like this case where contractual fees under an agreement not litigated are

First, Lender did not assert any claims in the First Litigation. It successfully defended RGA's improvident lawsuit challenging its handling of funds under the RSA. At that time, RGA had not defaulted, and Lender had not made any demand for the challenged fees.

Second, Lender's October 2021 demand for its Expenses (including attorneys' fees) seven months after the First Litigation, is based upon the Mortgage, which was not the agreement in dispute in the First Litigation. Lender did not need to invoke Rule 54(d). See Fed. R. Civ. P. 54 advisory committee note to 1993 amendment. Lender did not need to pursue a motion for attorneys' fees in the First Litigation. See U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Leigh, 293 So. 3d 515 (Fla. Dist. Ct. App. 2019) (allowing lender to demand attorneys' fees from prior litigation, pursuant to the terms of the contract). The Mortgage provides that RGA shall pay Lender upon demand "any and all expenses, including legal expenses and attorneys' fees … whether or not any legal proceeding is commenced hereunder or thereunder." Doc. No. 1-2 at 57. Lender's demand for attorneys' fees was under the Mortgage, not a fee award from the First Litigation.

Third, RGA mislabels Lender's right to attorneys' fees under the Mortgage as "prevailing party" fees. They are not. The Mortgage obligates Borrower to "pay to Lender any and all expenses, including legal expenses and attorney's fees, incurred or paid by Lender in protecting its interest in the Property..." Doc. No. 1-2 at 57. Under Section 1.1 of the Mortgage, Property includes the real property, personal property, rents from the Property, among other items. Id. at 1. Because Lender incurred out of pocket legal expenses protecting its interest in the Property and enforcing its rights, it is entitled to them under the Mortgage, not as a prevailing party.

---

applied according to its terms. Additionally, the basis for the claim in Padula does not arise from a good faith and fair dealing argument.

Finally, Lender could not pursue Expenses under the Mortgage until it demanded them. Doc. No. 1-2 at 57. At the time of the First Litigation, RGA has not defaulted under the terms of the Mortgage because Lender had not yet demanded, and RGA had not yet failed to pay, Expenses. Therefore, the attorneys' fees were not yet due and owing. Accordingly, the Mortgage adequately provides for Lender's ability to demand its attorneys' fees in a means outside of Rule 54(d).

Research has not revealed any cases holding that Lender is obligated to recover contractual fees via court action under Rule 54(d) under these or similar circumstances. Even if Lender was required to pursue attorneys' fees according to Rule 54(d), a violation of Rule 54(d) does not give rise to a claim for implied covenant for good faith and fair dealing.

### C.    Lender Provided Payoff Statements

Lastly, RGA cannot assert a good faith and fair dealing claim based upon the provision of payoff statements. The Complaint alleges that Lender provided three different payoff statements when requested, including one for the ultimate closing of the Loan. By providing the repeatedly providing requested payoff statements, which allowed the closing of the sale of the Property to move forward, Lender could not have violated the covenant of good faith and fair dealing.

### V.    RGA Is Not Entitled To Declaratory Relief Where Its Substantive Claims Fail And Where It Is Duplicative Of Plaintiffs' Breach Of Contract Claim.

RGA seeks a declaratory judgment determining whether Defendants are entitled to Loan fees that Borrower already paid in full. Plaintiff does not allege it paid off the Loan in protest. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). Claims for declaratory relief, however, are not independent causes of action, but rather requests for remedies.  See Greek v. Diet Works, LLC, No. CV 17-4738, 2018 WL 1905803, at

*4 (D.N.J. Apr. 23, 2018). Thus, where a complaint fails to state any plausible claim for relief, the request for declaratory relief necessarily fails. <u>See</u> <u>Fed. Nat'l Mortg. Ass'n v. Nicholas J. DuBois</u>, No. CV153787JMVMF, 2018 WL 5617566, at *13 (D.N.J. Oct. 30, 2018) ("[B]ecause every other claim in the [complaint] is dismissed for failure to state a claim, the court also dismisses the declaratory judgment count at this time."); <u>Greek</u>, 2018 WL 1905803, at *4 ("[C]ourts in this circuit routine dismiss stand alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action."). This Court should reject RGA's request for declaratory relief because it is predicated on the same failed legal theories as the substantive claims.

Furthermore, declaratory relief is inappropriate when seeking a determination of whether a contract has already been breached. Plaintiff's first claim is a breach of contract claim. Where a breach of contract claim is duplicative of a declaratory judgment claim it is appropriate to dismiss the declaratory judgment claim. <u>See</u> <u>Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.</u> Case No. 2:23-cv-22124 (WMJ), 2024 U.S. Dist. LEXIS 62417, at *9-10 (D.N.J. April 4, 2024) (dismissing declaratory judgment where the adjudication of the breach of contract claim would decide the question raised by the declaratory judgment claim).

Here, the breach of contract claim alleges that Lender used Reserves to pay fees, (Compl. ¶54), did not properly disburse funds (Compl. ¶55), and failed to properly allocate payments resulting in late fees and default interest (Compl. ¶¶56, 57). The declaratory judgment claim does essentially the same thing – it seeks declaration regarding attorneys' fees and the application of the fees and interest to the balance due (Compl. ¶69), whether the Loan Documents provide for attorneys' fees, (Compl. ¶70), and whether fees were properly demanded (Compl. ¶71). Thus, the declaratory judgment claim overlaps with breach of contract claim.

## VI.    The Unjust Enrichment Claim Fails Because Defendants' Relationship is Governed by Contract.

RGA may not assert an unjust enrichment claim when the challenged payments were expressly provided for under the Loan Documents. To prevail on an unjust enrichment claim, a plaintiff must show (1) the defendant received a benefit; (2) that benefit was unjust; and (3) the plaintiff expected remuneration from the defendant at the time it performed or conferred the benefit on the defendant and the failure of remuneration enriched the defendants' contractual rights. See Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 814-15 (D.N.J. 2000).  Unjust enrichment is a quasi-contractual theory. See id. at 814.

Here, RGA does not allege it expected remunerations. Rather, RGA simply paid off the amount in the payoff demand on April 18, 2024, which included late fees, special servicing fees, and liquidation fees. Similarly, the Lender made a demand in 2021 for attorneys' fees, special servicing fees, and a workout fee. See Compl. ¶25. Plaintiff does not allege that it objected to the attorneys' fees or the application of its payments to attorneys' fees and other fees complained about in the Complaint. Nor does Plaintiff allege it expected remuneration or reversal of those fees at the time the payment. Furthermore, the Court should not permit an unjust enrichment claim where there is a valid contract that allows the challenged fees.

## VII.    The Chapter 93A Fails for A Variety of Reasons

First, Chapter 93A does not apply to conduct that occurs primarily and substantially outside of Massachusetts. See G.L. c. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."); SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC, 722 F. Supp. 3d 16 (D. Mass. 2024) (granting judgment against 93A claim using holistic approach and

factors such as locus of alleged deceptive act, location of received conduct, and place of injury to determine whether conduct is substantially within Massachusetts)); Uncle Henry's Inc. v. Plaut Consulting Co., 399 F.3d 33 (1st Cir. 2005) (finding the alleged conduct primarily and substantially occurred outside of Massachusetts). Here, the conduct relates to a Loan secured by New Jersey property and Loan Documents governed by New Jersey law. See Compl. ¶5. Massachusetts has no relationship to the Loan or the allegations other than the Borrower being incorporated there. See Compl. ¶1. RGA is a Single Purpose Entity which may only own and operate the New Jersey Property and the rents and assets related thereto. Lender's principal place of business is in Minneapolis, Minesota. See Compl. ¶2. RGA even relies on New Jersey statutes to establish its allegations against the Lender. See Compl. ¶84. None of the conduct at issue occurred primarily or substantially in Massachusetts.

Second, the RSA precludes the Plaintiff's Claim under Chapter 93A. See Doc. No. 1-2 at 11. The RSA states "[t]his Agreement shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located." This language governs the relationship of the parties and is broad enough to preclude claims under G.L. c. 93A to the extent the allegations deal with the application of the terms of the contract. Compare Ne. Data Systems v. McDonnell Douglas Computer Systems Co., 986 F.2d 607 (1st Cir. 1993) (finding contractual choice of law clause governing rights and obligations precluded the plaintiffs' ability to bring claims under GL. c. 93A) with Kleiner v. Cengage Learning Holdings II, Inc., 66 F.4th 28 (1st Cir. 2023) (finding contractual choice of law provision only including "construed and governed" language too narrow). The choice of law provision is broad enough.

Third, the burden to establish Chapter 93A claims between sophisticated parties engaged in trade or commerce is substantial. Conduct between parties engaged in business must "attain a

18

level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce," (Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979); see also Spence v. Bos. Edison Co., 390 Mass. 604, 616 (1983)), or have a "rancid flavor of unfairness." Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 227 (1992). In the context of contract claims, a Chapter 93A violation must have "some egregious circumstance surrounding that breach." See Stonehill Coll. v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 582 (2004) (Sosman, J., concurring). Here, there is no breach, let alone any egregious conduct that could support a Chapter 93A claim. This contract dispute is insufficient to support a Chapter 93A claim in the rough and tumble business world.

Fourth, RGA's reliance on state statutes as a predicate for a 93A claim is misplaced. N.J. Stat. § 17:9A-59.31 applies to a "small business loan default." A "small business loan" is defined as "…a loan which is made to a small business concern *pursuant to [the Small Business Act]* and the purpose of which, as represented to the bank in writing by the small business concern, is to furnish the concern with funds for use in the conduct of the concern's trade, business or profession." See N.J. Stat. §17:9A-59.25 (emphasis added). The Complaint does not allege the Loan was a "small business loan" as defined in the statute, nor does it allege RGA is a "small business concern" as defined in the statute. Rather, the Mortgage expressly provides that "proceeds of the Loan will be used only for the purposes of acquiring or carrying on a business or commercial enterprise...." Doc. No. 1-2 at 59. Thus, a 93A claim cannot be premised on this statute.

Finally, RGA's reliance on Massachusetts Regulations governing the collection of consumer and student loans is misplaced. 209 CMR 18.21 applies to consumers. 209 CMR 18.02 defines consumer as "[a]ny natural person obligated or allegedly obligated to pay any debt." RGA has not and cannot allege it is a "natural person." RGA is an LLC, and, thus, not a consumer. See

Compl. ¶1. See also BoylstonD3 LLC v. Galvin, 496 F. Supp. 3d 692, 697 (D. Mass. 2020) (noting limited liability company not a natural person). Therefore, 209 CMR 18.21 cannot be a predicate for a violation of Chapter 93A.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court dismiss the complaint with prejudice and without leave to amend.

Respectfully submitted,

U.S. BANK, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C13 COMMERCIAL PASS-THROUGH CERTIFICATES, SERIES 2013-C-13 and WELLS FARGO BANK, N.A.

By their attorneys,

*/s/ David E. Fialkow*
David E. Fialkow (BBO# 666192)
david.fialkow@klgates.com
Skye E. Summers (BBO# 713703)
skye.summers@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

Dated: January 31, 2025

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that on January 31, 2025, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail, postage prepaid, to those indicated as non-registered participants.

*/s/ David E. Fialkow*
David E. Fialkow