UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROYCE-GEORGE & ASSOCIATES, LLC,    * <br>      * <br>      Plaintiff,      * <br>      * <br>      v.      * <br>      * <br> U.S. BANK, as TRUSTEE for MORGAN    * <br> STANLEY BANK OF AMERICA    * <br> MERRILL LYNCH TRUST 2013-C13    * <br> COMMERCIAL PASS-THROUGH    * <br> CERTIFICATES, SERIES 2013-C13 and    * <br> WELLS FARGO BANK, N.A.,    * <br>      * <br>      Defendants.      * | Civil Action No. 1:24-cv-12612-IT |

MEMORANDUM & ORDER

April 17, 2026

TALWANI, D.J.

Plaintiff Royce-George Associates, LLC ("RGA") brings this action against Defendants

U.S. Bank, N.A., as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C13

Commercial Pass-Through Certificates Series 2013-C13 ("U.S. Bank") and Wells Fargo Bank,

N.A. ("Wells Fargo"). RGA claims that Defendants impermissibly administered a commercial

mortgage loan and breached the terms of the loan agreement. Pending before the court is

Defendants' Motion to Dismiss [Doc. No. 9] RGA's Complaint for failure to state a claim upon

which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below,

the court DENIES in part and GRANTS in part Defendants' Motion.

I.    **Factual Background as Alleged in the Complaint**

A.    Property Financing

RGA is a Massachusetts limited liability company with a principal place of business in

the Commonwealth. Compl. ¶ 1 [Doc. No. 1]. In October 2003, RGA purchased a commercial

property (the "Property") in Flemington, New Jersey. Id. ¶ 7. In September 2013, RGA borrowed $2.5 million from Morgan Stanley Capital Holdings, LLC ("Morgan Stanley") as a non-recourse mortgage loan, secured by the Property and the right to income from a lease with Rite Aid, the Property's tenant. Id. ¶¶ 10, 14.

The parties executed the transaction (the "Loan") through five contractual agreements (collectively, the "Loan Documents") including: (1) the Promissory Note to Morgan Stanley [Doc. No. 1-1] (the "Note"), (2) the Mortgage in favor of Morgan Stanley [Doc. No. 1-2] (the "Mortgage"), (3) the Reserve and Security Agreement [Doc. No. 1-3] ("R&S Agreement"), (4) the Cash Management Agreement [Doc. No. 1-4] ("CMA"), and (5) the Deposit Account Control Agreement [Doc. No. 1-5] ("DACA"). Id. ¶ 11. The Loan Documents set a maturity date of October 1, 2023. See Note 1 [Doc. No. 1-1]; Compl. ¶ 11 [Doc. No. 1]. The Loan was later bundled and sold to U.S. Bank as a commercial mortgage-backed security. Compl. ¶ 12 [Doc. No. 1].

Pursuant to the Loan Documents, the Property's tenant, Rite Aid, paid rent under its lease agreement (the "Rite Aid Lease") directly into an account controlled by U.S. Bank and serviced by Wells Fargo. Id. ¶ 14. Wells Fargo used the rental income to make loan payments to U.S. Bank and then wired the excess to RGA monthly. Id. ¶¶ 14–15. The Loan Documents stipulated circumstances under which these rent payments became additional security for the Loan. Id. ¶ 14.

As relevant here, upon the occurrence of a "Trigger Event," the R&S Agreement [Doc. No. 1-3] required Wells Fargo to deposit all excess cash generated from the lease into an Excess Cash Reserve Account ("ECRA") rather than send the balance to RGA. R&S Agreement § 2.4 at 4–5 [Doc. No. 1-3]; see also Compl. ¶ 18 [Doc. No. 1]. A "Trigger Event" included "the tenant

2

under the Rite Aid Lease . . . enters into bankruptcy . . . and/or . . . Rite Aid gives notice of its intention to terminate its lease early or ceased to do business open to the public at the Property[.]" R&S Agreement § 2.4 at 5 [Doc. No. 1-3].

The Loan Documents define the ECRA as an interest-bearing account that, upon its creation, was to be controlled by U.S. Bank. See R&S Agreement § 2.4 at 5 [Doc. No. 1-3]; Compl. ¶ 18 [Doc. No. 1].

B.    The Trigger Event

In September 2017, Rite Aid assigned its rights under the lease to Walgreens. Id. ¶ 13. In July 2018, Wells Fargo learned that Walgreens planned to close the pharmacy operating on the Property. Id. ¶ 16. Wells Fargo notified RGA that it considered the anticipated closure to be a "trigger event" under the Loan Documents, because Rite Aid would cease "to do business open to the public at the Property." Id. ¶ 17; R&S Agreement § 2.4 at 4–5 [Doc. No. 1-3].

After closing the pharmacy, Walgreens continued to pay rent under the terms of Rite Aid's lease, and Wells Fargo deposited the excess rental income into the ECRA. Id. ¶ 20. From 2018–2022, Wells Fargo sent RGA Year End Statements showing the excess funds deposited in the ECRA as being held in "Total Reserve." Id.

C.    The First Litigation Between the Parties

RGA commenced a legal action against Wells Fargo and U.S. Bank in the United States District Court for the District of Massachusetts in December 2018, alleging breach of contract and breach of the implied covenant of good faith and fair dealing regarding the transfer of the rental income into the ECRA. See Royce-George & Assoc., LLC v. U.S. Bank, N.A. ("RGA I"), No. 18-CV-12198-ADB, 2021 WL 294244 (D. Mass. Jan. 28, 2019). The court granted Defendants' motion for summary judgment, finding that the transfer of rental income was

conducted in accordance with the Loan Documents. Id. Defendants did not seek an award of legal fees in RGA I.

D.      Post-Litigation Demand for Fees

The Mortgage required RGA to "pay to [U.S. Bank] on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property, whether or not any legal proceeding is commenced[.]" Mortgage § 19.2 at 57 [Doc. No. 1-2]. Such attorneys' fees, in addition to "all 'special servicing,' 'workout,' and/or 'liquidation' fees (or their equivalent)[]" must be paid along with interest accruing at the "Default Rate from the date paid or incurred by [U.S. Bank] until such expenses are paid[.]" Id.

On October 4, 2021, counsel for U.S. Bank sent a demand for payment to RGA asserting that it had incurred legal fees "in connection with its defense of [RGA I], enforcing its rights under the Loan Documents and protecting its rights to the Property under the Loan Documents" in the amount of $368,880.31; $35,886.76 for "Special Servicing Fees"; and $15,471.25 for a "Workout Fee." Compl. Ex. F, at 1–2 [Doc. No. 1-6]. U.S. Bank demanded payment pursuant to Section 19.2 of the Mortgage. Id. at 2. No accounting of the fees was provided to RGA. Compl. ¶ 27. RGA did not pay the fees upon demand.

E.      The Sale

As of December 31, 2022, Wells Fargo's Year End Statement summarizing the status of the Loan indicated that the ECRA had a balance of $464,831.86 and no miscellaneous charges had been incurred. Compl. Ex. G [Doc. No. 1-7]; Compl. ¶ 28 [Doc. No. 1].

In April 2023, RGA entered into a Purchase and Sale Agreement regarding the Property that was anticipated to close on October 1, 2023, the Loan's maturity date. Compl. ¶ 29 [Doc.

4

No. 1]. On September 3, 2023, RGA informed Rialto Capital Advisers ("Rialto"), a sub-servicer and agent of Wells Fargo, of its intention to sell the Property and asked Rialto to apply the ECRA funds to the balance of the Loan on the maturity date. Compl. Ex. H [Doc. No. 1-8]; Compl. ¶¶ 30–31 [Doc. No. 1]. RGA alleges that, as of the maturity date, the ECRA account should have contained "approximately $553,674.40" and that applying the funds in the ECRA account "would have reduced the balance due [on the Loan] to approximately $528,333." Compl. ¶ 32 [Doc. No. 1].

On October 5, 2023, Rialto sent RGA a Notice of Default Demand and a Reservation of Rights Letter. Id. ¶ 33. On November 29, 2023, counsel for Wells Fargo sent RGA a Payoff Demand Statement for the Loan. Id. ¶ 34. RGA requested information regarding the Payoff Demand Statement to verify its accuracy and received 40 pages of "loan history" on December 14, 2023. Id. ¶¶ 35–36. The document detailed several charges, fourteen of which were itemized as "miscellaneous items," totaling $296,194.74. Id. ¶ 37. RGA twice requested a description of these fourteen charges, to which neither Wells Fargo nor U.S. Bank responded. Id. ¶¶ 37–39.

RGA postponed the closing twice in February and March 2024, because Wells Fargo and U.S. Bank did not provide a payoff statement in response to RGA's requests. Id. ¶¶ 41–46. On March 27, 2024, RGA received an Estimated Payoff Statement dated March 25, 2024, after sending a demand letter pursuant to Mass. Gen. Laws ch. 93A. Id. ¶ 45. The Estimated Payoff Statement included several fees and charges, totaling $211,629.62. Id. ¶ 47. The total payoff balance, including the remaining loan balance, was $1,183,570.89. Id. From this information, RGA deduced that the ECRA funds had not been applied to reduce the principal amount on the Maturity Date, as RGA had requested. Id. ¶ 48; see also Compl. Ex. H [Doc. No. 1-8].

On April 18, 2024, RGA sold the property and paid off the loan to U.S. Bank, based on the amount shown on a Payoff Demand Statement, dated April 16, 2024, provided by Rialto. Compl. ¶ 46 [Doc. No. 1].

## II.     Procedural Background

On October 11, 2024, RGA filed its Complaint [Doc. No. 1] in the instant case. RGA alleges breach of contract (Count I), accounting under New Jersey law (Count II), violation of the implied covenant of good faith and fair dealing (Count III), as well as claims for declaratory relief regarding Defendants' claimed attorney's fees (Count IV), and unjust enrichment for charging erroneous fees (Count V). RGA also claims a violation of Massachusetts law under Mass. Gen. Laws ch. 93A, §§ 2, 11, for misrepresentation of fees and terms and conditions, as well as "knowingly or recklessly misapply[ing] payments made to escrow accounts" (Count VI). Id. ¶ 79. Defendants responded with their pending Motion to Dismiss [Doc. No. 9].

## III.     Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . .." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### IV. Discussion

The Parties agree that New Jersey law governs the contracts at issue here. Compl. ¶ 5 [Doc. No. 1]; Def.'s Mem. ISO Mot. to Dismiss 4 ("Def.'s Mem.") [Doc. No. 10]. Accordingly, the court will "accept the parties' agreement[]" and apply New Jersey law to interpret the Loan Documents. Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991).

#### A. Count I: Breach of Contract

RGA alleges that U.S. Bank and Wells Fargo had "an obligation, pursuant to the Reserve and Security Agreement, to pay interest on Excess Cash it deposited into the ECRA[]" and it failed to do so. Compl. ¶ 51 [Doc. No. 1]. Further, RGA alleges that Wells Fargo improperly paid itself fees from the ECRA account funds and that Rialto failed to pay the ECRA funds toward the principal of the debt, as requested by RGA on September 3, 2023. Id. ¶¶ 55–57. Defendants argue that the claim is not adequately pled because it fails to reference a specific provision or document and, alternatively, that no breach occurred because Defendants applied the funds "consistently with the Loan Documents." Def.'s Mem. 7–8 [Doc. No. 10].

In New Jersey, a plaintiff must prove four elements to succeed on a breach of contract claim:

> first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."

RGA I, 2021 WL 294244, at *4 (quoting Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016) (alterations in original)).

Upon the occurrence of a Trigger Event, the R&S Agreement required Defendants to set aside the excess funds resulting from Walgreens's rental payments and deposit the funds in an interest-bearing escrow account. R&S Agreement 5 [Doc. No. 1-3] ("Such Cash Flow shall be deposited by Lender in an interest-bearing escrow account . . . to be held by Lender pursuant to the terms of this Agreement and the other Loan Documents."); see also RGA I, 2021 WL 294244, at *2. Excluding conditions not relevant here, the R&S Agreement required that the excess funds be maintained in the ECRA, bearing interest, until the Loan's maturity date, October 1, 2023, at which point the funds would be used to make U.S. Bank whole and any excess returned to RGA. R&S Agreement 5, 10 [Doc. No. 1-3].

Wells Fargo provided to RGA a 2022 Year End Summary that reflects $464,831.86 in "Total Reserve(s)" maintained in the ECRA. Compl. Ex. G [Doc. No. 1-7]. However, the Summary includes no funds credited to either "Interest Earned on Escrows" or "Interest on Escrow Withheld." Id. RGA asserts that these figures demonstrate U.S. Bank's failure to ensure that the ECRA was bearing interest, as required under the terms of the Reserve and Security Agreement. See R&S Agreement 5 [Doc. No. 1-3]; Compl. ¶ 51 [Doc. No. 1]. Defendants do not address these allegations.

Defendants' alleged failure to establish an interest-bearing ECRA caused a loss to RGA. The ECRA allegedly held Walgreens' rental income for a six-year period during which it could have accrued interest. Compl. ¶¶ 20, 46. When Defendants ultimately used the ECRA funds to pay down the Loan and expenses, additional interest income would have further reduced RGA's liability.

Given the plain language of the Reserve and Security Agreement requiring Defendants to establish an interest-bearing ECRA, and RGA's plausible allegations that they failed to do so, the

8

court finds dismissal of RGA's breach of contract claim unwarranted. In light of RGA's facially plausible allegations regarding Defendants' failure to establish an interest-bearing ECRA, the court need not consider RGA's remaining allegations of a breach of contract, and Defendants' motion to dismiss Count I of RGA's Complaint is DENIED.

      B.      <u>Count II: Accounting</u>

RGA asks the court to order equitable accounting and to require Defendants to explain the basis for both the attorneys' fees, <u>see</u> 2021 statement, Ex. F [Doc. No. 1-6], and the 2024 Loan payoff fees, Compl. ¶ 47 [Doc. No. 1]. <u>See id.</u> ¶ 64. Defendants argue that RGA is not entitled to accounting because U.S. Bank has provided a loan payment history and payoff statements to RGA. Defs.' Mem. 9–10 [Doc. No. 10].

To assert a claim for equitable accounting in New Jersey, a plaintiff must show either the "existence of a fiduciary or trust relation, complicated character of the account, or need of discovery." <u>Onderdonk v. Presbyterian Homes of New Jersey</u>, 425 A.2d 1057, 1062 n.4 (N.J. 1981); <u>see also</u> <u>Transtech Indus., Inc. v. Certain Underwriters at Lloyds London</u>, No. A-2604-07T2, 2009 WL 2146496, at *3 (N.J. Super. Ct. App. Div. July 21, 2009) ("[A]ccountings are not available as a right, [though] they may be ordered when a complicated account is involved, or it is required for discovery.").

While "there is no presumed fiduciary relationship between a bank and its customer," <u>United Jersey Bank v. Kensey</u>, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997), a fiduciary relationship likely arose between the parties with respect to the ECRA, <u>see, e.g.</u>, <u>Innes v. Marzano-Lesnevich</u>, 224 N.J. 584, 598 (2016) ("A fiduciary relationship is created by and inherent in the nature of an escrow agreement."). Accordingly, it is plausible that an equitable accounting may be appropriate based on Defendants' position as fiduciary with respect to the

9

ECRA account and how those funds were later applied to the Loan payoff in 2024. See Transtech Industries, Inc., 2009 WL 2146496, at *3 ("Generally, accountings are ordered when there is a fiduciary relationship between the parties and a duty by one party to account to the other.").

Additionally, RGA alleges that Defendants have assessed significant attorneys' and other fees in association with both the RGA I 2018 litigation and the Loan payoff in 2024. Compl. ¶ 47 [Doc. No. 1]. RGA further alleges that it requested support and explanation for the fees from Defendants multiple times and received either no response or insufficient information. Id. ¶¶ 36–39, 41. Drawing reasonable inferences from RGA's allegations, the court concludes that information regarding the basis for the fees is solely within Defendants' possession and otherwise inaccessible to RGA. See Coldwell Banker Real Est., LLC v. Bellmarc Grp. LLC, No. 14-7926, 2021 WL 4129492, at *9 (D.N.J. Sept. 9, 2021), aff'd on other grounds, 2022 WL 3644183 (3d Cir. Aug. 24, 2022).

Defendants assert that the RGA I-related discovery obviates the need for discovery now. Defs.' Mem. 9–10 [Doc. No. 10]. That assertion is undermined by Defendants' further contention that they "had no obligation to seek attorneys' fees in [RCA I]," they "asserted no claims [in RCA I], the fees were not yet due and owing, the fees arose under another agreement, and the fees were not 'prevailing party' fees." Id. at 13. Moreover, the accounting requested by RGA includes not only attorneys' fees incurred during the prior litigation as well as fees charged in association with the Loan payoff in 2024. Compl. ¶ 64. Accordingly, other than potentially indicating some scope of work done by the attorneys, discovery that occurred during RGA I sheds little light on how much the RGA I litigation cost U.S. Bank. Based on RGA's allegations,

10

it is plausible that an accounting is necessary to determine the basis of the fees and Defendants' motion to dismiss Count II is therefore DENIED.

      C.      <u>Count III: Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff alleges that Defendants violated New Jersey's implied covenant of good faith and fair dealing "when they (a) charged fees they did not earn, and which were not provided for by the loan documents; (b) simply kept attorneys' fees claimed due, without first obtaining approval from the Court . . .; (c) failed to timely issue a pay-off statement, despite due demand; and (d) failed to credit to principal certain funds held in escrow, as requested by the Plaintiff [.]" Compl. ¶ 66 [Doc. No. 1].

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587 (N.J. 1997) "A party . . . breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000) (citing <u>Sons of Thunder</u>, 690 A.2d at 588–89). However, merely disadvantaging another party does not indicate a breach of good faith, and "contract law does not require parties to behave altruistically toward each other." <u>Fabbro v. DRX Urgent Care, LLC</u>, 616 F. App'x 485, 488 (3d Cir. 2015). Instead, the implied covenant of good faith and fair dealing "mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Tredo v. Ocwen Loan Servicing, LLC</u>, No. 14–3013, 2014 WL 5092741, at *6 (D.N.J. Oct. 10, 2014) (quoting <u>Seidenberg v. Summit Bank</u>, 791 A.2d 1068, 1074 (N.J. Super. Ct. App. Div. 2002)).

Further, the "alleged bad-faith actions must also have denied Plaintiff 'the benefit of the bargain originally intended by the parties.'" <u>Irwin Katz & Assoc., Inc. v. Concepts in Health,</u>

Inc., No. 13-1217, 2017 WL 593502, at *23 (D.N.J. Feb. 14, 2017) (quoting Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 525 F. App'x 94, 106 (3d Cir. 2013)). Here, RGA alleges, *inter alia*, that Defendants withheld the payoff statements requested by RGA in Spring 2024. Compl. ¶ 41–44 [Doc. No. 1]. RGA also alleges that Defendants' failure to timely produce the payoff statements upon request forced RGA to postpone selling the Property until April 18, 2024. Id. ¶ 46. Taking all allegations as true and drawing all reasonable inferences in RGA's favor, it is plausible that Defendants delayed production of the statements in bad faith because additional interest fees accrued as the sale was postponed and RGA's default continued.

The Loan Documents permit Defendants to charge "interest, default interest, late charges, and other sums[]" upon RGA's default. Note at 2 [Doc. No. 1-1]. However, if Defendants were to have intentionally attenuated the duration of those charges through contributing to RGA's default, such conduct would deny RGA "the fruits of the contract," in this case, frustrating RGA's ability to cure its default. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001) (regarding contracts where a party has authority to set pricing, a "party exercising its right to use discretion in setting price under a contract breaches the [implied covenant] if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.").

Defendants assert that they "could not have violated the covenant of good faith and fair dealing" because Defendants "provid[ed the] requested payoff statements[.]" Defs.' Mem. 15 [Doc. No. 10]. However, RGA asserts that Defendants' failure to "timely" provide the payoff statements, rather than a total denial of the request, breached the implied covenant. Compl. ¶ 43 [Doc. No. 1]. Accordingly, the court finds that RGA's allegations as to Defendants breach of the implied covenant of good faith and fair dealing plausibly sufficient to survive Defendants'

Motion to Dismiss [Doc. No. 9] and the court need not consider RGA's remaining allegations as to that claim at this preliminary stage. Defendants' motion to dismiss as to Count III is therefore DENIED.

D.    Count IV: Declaratory Relief

Plaintiff brings a claim for declaratory relief as to three controversies: (1) "the propriety of the attorneys' fees claimed by the Defendants, their failure to request a hearing as to the same, as well as to the imposition of certain fees and interest, after the Plaintiff requested that the balance of its escrow account be applied to the principal balance due[;]" (2) "whether the indemnification clause in the Parties' Deposit [Account] Control Agreement [§ 12 [Doc. No. 1-5]] or their Reserve and Security Agreement [§ 3.3 [Doc. No. 1-3]] entitles the Defendants to attorneys' fees[;]" and (3) "whether the legal fees charged by the Defendant are 'reasonable,' and as to whether 'demand[]' for said fees, was timely, or ever, made." Compl. ¶¶ 69–71 [Doc. No. 1]. Defendants argue that dismissal is warranted because 1) a request for declaratory relief cannot stand alone and RGA's "substantive claims" should be dismissed; and 2) RGA's "declaratory judgment claim overlaps with [its] breach of contract claim." Defs.' Mem. 16 [Doc. No. 10].

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). The Act does not "provide an independent basis for subject-matter jurisdiction; it merely defines a remedy." Allen v. DeBello, 861 F.3d 433, 444 (3d Cir. 2017); Auto–Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 394 (3d Cir. 2016) (noting that the Declaratory

Judgment Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject-matter jurisdiction). Nor does the Act create an independent cause of action. See Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district courts' quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

Because the court has found that dismissal is unwarranted as to RGA's other substantive claims, whether RGA is entitled to declaratory relief on those claims remains an open question. See, e.g., Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 459 (D.N.J. 2015). Further, while Count IV repeats some allegations from other causes of actions in the Complaint, RGA's request for declaratory relief is not "entirely duplicative" of its other claims, such that dismissal is warranted at this preliminary stage. See, e.g., Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd., No. 2:23-CV-22124, 2024 WL 1461346, at *4 (D.N.J. Apr. 4, 2024) (citing concerns of judicial economy, the court dismissed a declaratory judgment claim where the claim was duplicative of a live breach of contract claim.). Accordingly, Defendants' motion to dismiss Count IV is DENIED.

E.    Count V: Unjust Enrichment

Count V of RGA's Complaint [Doc. No. 1] alleges unjust enrichment, in that "Defendant charged the Plaintiff fees to which it was not entitled, contrary to the rights of the Plaintiff[]" and "Plaintiff has been damaged in exact proportion to which the Defendant has been unjustly enriched." Compl. ¶¶ 74–75.

To state a claim for unjust enrichment, "a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to

retain benefit without paying for it." In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement (First) of Restitution § 1 (A.L.I. 1937)); see also VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994) ("To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."). To survive a motion to dismiss, a plaintiff must plead "facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (quoting Palmeri v. LG Electronics USA, Inc., No. 07–5706, 2008 WL 2945985, at *5 (D.N.J. July 30, 2008); St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am., 158 A.2d 825, 828 (N.J. 1960) (considering whether party was entitled to unjust enrichment remedy because other party had "accepted a benefit . . . beyond its contractual right.").

Defendants argue that RGA's claim fails because RGA has "not allege[d] it expected remunerations[]" from Defendants in exchange for paying the fees. Def.'s Mem. 17 [Doc. No. 10]. However, New Jersey law incorporates no such requirement for an unjust enrichment claim. See VRG Corp., 641 A.2d at 526 ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." (emphasis added)). RGA has plausibly alleged that it paid fees to Defendants associated with the RGA I litigation and Loan payoff and seeks to determine whether those fees are warranted and/or reasonable. Compl. ¶ 74. Accordingly, RGA has alleged that it conferred a monetary benefit to Defendants and, should RGA's claims prove meritorious, that it would be unjust for Defendants to retain that benefit. See VRG Corp., 641 A.2d at 526.

Defendants' motion to dismiss Count V is therefore DENIED.[1]

F.   Count VI: Violation of Mass. Gen. Laws ch. 93A, §§ 2, 11

Finally, RGA alleges that Wells Fargo violated Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A ("Chapter 93A"), when the servicer failed to apply the ECRA funds to pay down the Loan prior to default, as requested by RGA. Compl. ¶¶ 76–83 [Doc. No. 1]; Opp'n 17–20 [Doc. No. 16]. Defendants assert, *inter alia*, that Chapter 93A does not offer protection to RGA because (1) the alleged violative conduct has no relation to Massachusetts; and (2) the Loan Documents' choice-of-law provision, which designates New Jersey law as governing the agreement, controls and precludes a Chapter 93A claim. Def.'s Mem. 17–18 [Doc. No. 10].

1.   **Choice-of-Law Clause**

Taking Defendants' arguments in the reverse, the court considers the effect, if any, of the R&S Agreement's choice-of-law clause on RGA's Chapter 93A claim. In analyzing similar contractual provisions, the Massachusetts Supreme Judicial Court has distinguished between agreements which state that "the rights of the parties are to be governed by [another state's] law" and those where "the agreement is to be governed and construed by [another state's] law." Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 580 n.9, 646 N.E.2d 741, 746 n.9 (1995) (emphases added) (finding that because only the contract and not the parties were governed by the choice of law clause, then a Chapter 93A claim could properly be brought).

Here, the contract provides that the "Agreement shall be governed, construed, applied and enforced in accordance with the laws of [New Jersey]." R&S Agreement 11 [Doc. No. 1-3].

---

[1] The court does not reach Defendants' contention that "the Court should not permit an unjust enrichment claim where there is a valid contract that allows the challenged fees," see Def.'s Mem. 17 [Doc. No. 10], where this argument has not been developed in the briefing.

Accordingly, while New Jersey law controls the R&S Agreement, the contractual language does not govern the rights of the contracting parties outside of the Agreement. See Jacobson, 419 Mass. at 580 n.9, 646 N.E.2d at 746 n.9. Where the choice-of-law provision does not preclude RGA's Chapter 93A claim, the court considers whether RGA's allegations suffice to maintain the claim.

## 2. Jurisdictional Prerequisite

Chapter 93A prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass Gen. Laws ch. 93A, § 2(a). To maintain a Chapter 93A action "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice" must have "occurred primarily and substantially within the commonwealth." Id. § 11; Roche v. Royal Bank of Canada, 109 F.3d 820, 829 (1st Cir. 1997).

The burden of demonstrating that the alleged offensive conduct occurred primarily and substantially outside of Massachusetts rests with Defendants. See Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 255 (1st Cir. 2004). Although it may be "fact-intensive," Evergreen Partnering Grp., Inc. v. Pactiv Corp., No. 11-10807-RGS, 2014 WL 304070, at *5 (D. Mass. Jan. 28, 2014), this issue reduces to a matter of law, Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 90 (1st Cir. 1995). To determine whether the alleged violative conduct meets Chapter 93A's jurisdictional predicate, the court assesses whether the "center of gravity of the circumstances giving rise to the claim is primarily and substantially within" Massachusetts. Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473, 781 N.E.2d 787, 799 (2003). In its analysis, "a court focuses solely on the actionable conduct said to give rise to the violation; other conduct, no matter where it takes

17

place, may not be considered on the question." <u>Spring Inv. Servs., Inc. v. Carrington Cap. Mgmt., LLC</u>, No. 10-10166-FDS, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013).

As alleged by RGA, Wells Fargo's wrongful conduct stems from the decision to ignore RGA's request to use the ECRA funds to pay down the Loan and mitigate RGA's default. Compl. ¶ 78 [Doc. No. 1]. RGA does not claim that Wells Fargo's principal place of business, the place to which Wells Fargo's decision-making may be attributed, is in the Commonwealth. <u>See</u> Compl. ¶ 3 [Doc. No. 1] (alleging that Wells Fargo's "principal place of business" is in California). The Property, the subject of the Loan Documents, is located in New Jersey. <u>Id.</u> ¶ 7. While, RGA likely suffered any alleged "financial loss" at its principal place of business in Massachusetts, that fact alone is insufficient to establish a nexus sufficient to maintain Chapter 93A liability. <u>Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC</u>, 107 F. Supp. 2d 82, 88–89 (D. Mass. 2000), aff'd, 259 F.3d 25 (1st Cir. 2001); <u>see</u> <u>Zyla</u>, 360 F.3d at 255 (Chapter 93A claim properly dismissed where plaintiff's residence was sole connection to Massachusetts); <u>Evergreen</u>, 2014 WL 304070, at *4 (granting motion to dismiss where the plaintiff "fail[ed] to identify a single deceptive act or practice or 'dominant event' that is alleged to have occurred in Massachusetts"); <u>cf.</u> <u>Controlled Kinematics, Inc. v. Novanta Corp.</u>, No. 17-cv-11029-ADB, 2017 WL 5892200, at *4 (D. Mass. Nov. 29, 2017) (denying motion to dismiss Chapter 93A claim where the "complaint[] directly reference[d] actions that occurred in Massachusetts and communications sent from Massachusetts.").

Because the center of gravity of the circumstances giving rise to Plaintiff's Chapter 93A claim is not primarily and substantially located in Massachusetts, Defendant's motion to dismiss Count VI of the RGA's Complaint is GRANTED.

**V.      Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 9] is GRANTED as to Count VI of the Complaint [Doc. No. 1] and is otherwise DENIED.

IT IS SO ORDERED.

April 17, 2026                                      /s/ Indira Talwani
                                                         United States District Judge

19